## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS ANTITRUST LITIGATION | MDL NO. 2724 16-MD-2724 |
| IN RE: DIGOXIN CASES | LEAD CASE: 16-DG-27240 RESELLER CASE: 16-DG-27243 |
| | HON. CYNTHIA M. RUFE ORAL ARGUMENT REQUESTED |
| THIS DOCUMENT RELATES TO: ALL INDIRECT RESELLER PLAINTIFF (IRP) ACTIONS | |

### DEFENDANTS' JOINT MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE INDIRECT RESELLER PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

**REDACTED VERSION**

## CITATION FORM

In support of its motion, Defendants refer to and incorporate their Memorandum of Law in Support of Their Joint Motion to Dismiss Consolidated Direct Purchaser Plaintiffs' Complaint for digoxin that was filed contemporaneously with this brief and is cited in this brief as "DPP Mem. __."

Defendants also refer to and incorporate their Joint Memorandum of Law in Support of Their Motion to Dismiss the Consolidated Amended End-Payer Class Action Complaint for digoxin that was filed contemporaneously with this brief and is cited in this brief as "EPP Mem. __."

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 2

    A.    The Parties ...................................................................................................... 2
    B.    Digoxin .......................................................................................................... 2
    C.    Plaintiffs' Claims .......................................................................................... 3

ARGUMENT ...................................................................................................................... 4

I.      PLAINTIFFS' SHERMAN ACT AND STATE LAW CLAIMS MUST BE
       DISMISSED BECAUSE THEY FAIL TO MEET THE *TWOMBLY* PLEADING
       STANDARD ...................................................................................................... 4

    A.    Plaintiffs Do Not Allege Direct Evidence of an Agreement to Fix Prices ............ 5
    B.    Plaintiffs Do Not Sufficiently Plead Circumstantial Evidence of a
       Conspiracy .................................................................................................... 5

II.     PLAINTIFFS LACK ARTICLE III STANDING TO SUE UNDER THE LAWS
       OF EVERY STATE EXCEPT CALIFORNIA, FLORIDA, MISSISSIPPI, NEW
       YORK, TENNESSEE, AND WISCONSIN ...................................................... 7

III.    PLAINTIFFS' ANTITRUST CLAIMS MUST ALSO BE DISMISSED
       BECAUSE PLAINTIFFS LACK ANTITRUST STANDING UNDER
       *ASSOCIATED GENERAL CONTRACTORS* ...................................................... 8

IV.    PLAINTIFFS' CONSUMER FRAUD AND UNJUST ENRICHMENT CLAIMS
       MUST BE DISMISSED BECAUSE PLAINTIFFS FAILED TO PLEAD
       PROXIMATE CAUSATION ............................................................................. 11

V.     PLAINTIFFS' CALIFORNIA STATE LAW CLAIMS MUST BE DISMISSED ......... 12

    A.    Unjust Enrichment is Not a Cause of Action in California ................................ 12
    B.    Plaintiffs' Unjust Enrichment Claim is Time Barred ........................................ 13

VI.    PLAINTIFFS' FLORIDA STATE LAW CLAIMS MUST BE DISMISSED ............... 13

    A.    Plaintiffs Cannot Circumvent *Illinois Brick* by Alleging Violations of
       Florida's Consumer Protection Law or Unjust Enrichment ............................... 13
    B.    Plaintiffs' Florida Consumer Protection Claim Fails Because Plaintiffs'
       Fail to Plead Unconscionable, Unfair, or Deceptive Conduct ............................ 14
    C.    Plaintiffs' Unjust Enrichment Claim Also Fails Because Florida Requires
       that Plaintiffs Confer a Direct Benefit on Defendants ....................................... 15

VII.   PLAINTIFFS' MISSISSIPPI CLAIMS MUST BE DISMISSED ................................. 16

    A.    The Mississippi Antitrust and Unjust Enrichment Claims are Time Barred ....... 16

# TABLE OF CONTENTS
(continued)

Page

B.      Unjust Enrichment is Not a Cause of Action Under Mississippi Law ................ 17

VIII.   PLAINTIFFS' CLAIMS UNDER NEW YORK LAW SHOULD BE
        DISMISSED ................................................................................................................ 17

        A.      Plaintiffs' New York Antitrust Claim Fails Because Plaintiffs do Not
                Allege Sufficient Intrastate Activity ..................................................... 17
        B.      Plaintiffs' New York Consumer Protection Claim Fails as a Matter of Law ...... 18
                1.      Plaintiffs Fail To Allege Deceptive Conduct as Required Under
                        New York Law.......................................................................... 18
                2.      Plaintiffs Fail to Sufficiently Allege In-State Injury................................ 20
                3.      The New York Consumer Protection and Unjust Enrichment
                        Claims are Time Barred .......................................................... 20
        C.      Plaintiffs' New York Unjust Enrichment Claim Fails As A Matter of Law ....... 21
                1.      New York Law Requires that Plaintiffs Confer a Direct Benefit on
                        Defendants ............................................................................. 21
                2.      Plaintiffs Fail to Allege They Lack an Adequate Legal Remedy ........... 21

IX.     PLAINTIFFS' TENNESSEE CLAIMS SHOULD BE DISMISSED ............................ 22

        A.      The Tennessee Antitrust and Unjust Enrichment Claims Are Time Barred........ 22
        B.      The Unjust Enrichment Claim under Tennessee Law Fails as a Matter of
                Law ...................................................................................................... 22
                1.      Tennessee Law Requires that Plaintiffs Confer a Direct Benefit on
                        Defendants ............................................................................. 23
                2.      Plaintiffs Have Failed to Plead Exhaustion of Remedies ....................... 23
                3.      Plaintiffs Do Not Lack An Adequate Legal Remedy .............................. 23

X.      PLAINTIFFS' WISCONSIN CLAIMS SHOULD BE DISMISSED ............................ 24

        A.      Plaintiffs' Consumer Protection Claim Should be Dismissed Because They
                Fail to Plead Deceptive Conduct or Reliance on a False Statement ................... 24
        B.      Plaintiffs' Wisconsin Consumer Protection Claim is Time Barred .................... 25
        C.      Wisconsin Law Requires that Plaintiffs Confer a Direct Benefit on
                Defendants…………………………………………………………………..25

CONCLUSION........................................................................................................... 26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aftermarket Filters Antitrust Litig.*,
  MDL No. 1957, 2009 U.S. Dist. LEXIS 104114 (N.D. Ill. Nov. 5, 2009)..............................18

*Am. Safety Ins. Serv., Inc. v. Griggs*,
  959 So.2d 322 (Fla. Dist. Ct. App. 2007) ...............................................................16

*Associated General Contractors of California v. California State Council of
  Carpenters*,
  459 U.S. 519 (1983)...................................................................... *passim*

*In re Automotive Refinishing Paint Antitrust Litig.*,
  515 F. Supp. 2d 544 (E.D. Pa. 2007) .....................................................................19

*Barton & Pittinos, Inc. v. SmithKline Beecham Corp.*,
  118 F.3d 178 (3d Cir. 1997)...........................................................................8, 9, 10

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................1, 4

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*,
  3 N.Y.3d 200 (2004) .......................................................................................18

*Burtch v. Milberg Factors, Inc.*,
  662 F.3d 212 (3d Cir. 2011).................................................................................6

*California v. Infineon Techs. AG*,
  531 F. Supp. 2d 1124 (N.D. Cal. 2007) ................................................................13

*Carder v. BASF Corp.*,
  No. Civ. A. 021069, 2003 WL 25267524 (Miss. Ch. Nov. 19, 2003), *aff'd*,
  919 So. 2d 258 (Miss. Ct. App. 2005) ..................................................................16

*In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*,
  No. 1:14-md-2508, 2015 U.S. Dist. LEXIS 121620 (E.D. Tenn. June 24,
  2015) .................................................................................................17, 18

*Cole v. Chevron USA, Inc.*,
  554 F. Supp. 2d 655 (S.D. Miss. 2007)..................................................................17

*Conergy AG v. MEMC Elec. Materials, Inc.*,
  651 F. Supp. 2d 51 (S.D.N.Y. 2009)......................................................................18

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*D.R. Ward. Const. Co. v. Rohm & Haas Co.*,
    470 F. Supp. 2d 485 (E.D. Pa. 2006) ........................................................................23

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
    No. 09-cv-3690, 2013 U.S. Dist. LEXIS 119962 (N.D. Ill. Aug. 23, 2013) ..........................11

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
    No. 09-cv-3690, 2015 U.S. Dist. LEXIS 84152 (N.D. Ill. June 29, 2015)................11, 14, 16

*In re Digital Music Antitrust Litig.*,
    592 F. Supp. 2d 435 (S.D.N.Y. 2008)................................................................5, 18

*Dooner v. Yuen*,
    No. 16-1939, 2016 U.S. Dist. LEXIS 143455 (D. Minn. Oct. 17, 2016) ........................21, 24

*Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*,
    1 So.3d 400 (Fla. Dist. Ct. App. 2009) ..................................................................15

*In re Fla. Cement & Concrete Antitrust Litig.*,
    746 F. Supp. 2d 1291 (S.D. Fla. 2010) ..................................................................11

*In re Flonase Antitrust Litig.*,
    692 F. Supp. 2d 524 (E.D. Pa. 2010) ....................................................................15

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009)..............................................................................11

*Freeman Indus., LLC v. Eastman Chem. Co.*,
    172 S.W.3d 512 (Tenn. 2005)............................................................................23

*Furlough v. Spherion Atl. Workforce, LLC*,
    397 S.W.3d 114 (Tenn. 2013)............................................................................23

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
    98 N.Y.2d 314 (2002) ....................................................................................20

*In re Graphics Processing Units Antitrust Litig.*,
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) ...................................................................4

*Griffin v. Dugger*,
    823 F.2d 1476 (11th Cir. 1987) ...........................................................................7

*H-Quotient, Inc. v. Knight Trading Grp., Inc.*,
    No. 03-cv-5889, 2005 U.S. Dist. LEXIS 1924 (S.D.N.Y. Feb. 7, 2005)................................17

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Hill v. Roll Int'l Corp.*,
    128 Cal. Rptr. 3d 109 (Cal. Ct. App. 2011) ............................................................12

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
    No. 09-md-2087, 2011 U.S. Dist. LEXIS 60523 (S.D. Cal. May 24, 2011) ..........17

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977)....................................................................................................13

*Jones v. ConAgra Foods, Inc.*,
    No. C 12-01633, 2014 U.S. Dist. LEXIS 81292 (N.D. Cal. June 13, 2014) ..........25

*Kain v. Bluemound E. Indus. Park, Inc.*,
    635 N.W.2d 640 (Wis. Ct. App. 2001) ...................................................................25

*Kaufman v. Cohen*,
    307 A.D.2d 113 (N.Y. App. Div. 2003) ..................................................................20

*Kopel v. Kopel*,
    117 So.3d 1147 (Fla. Dist. Ct. App. 2013) .............................................................15

*In re Lamictal Indirect Purchaser & Antitrust Consumer Litig.*,
    172 F. Supp. 3d 724 (D.N.J. 2016) ...................................................................18, 20

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    No. 11 MDL 2262 (NRB), 2015 U.S. Dist. LEXIS 149629 (S.D.N.Y. Nov. 3,
    2015) ..........................................................................................................................20

*In re Lidoderm Antitrust Litig.*,
    103 F. Supp. 3d 1155 (N.D. Cal. 2015) ..................................................................14

*In re Lower Lake Erie Iron Ore Antitrust Litig.*,
    998 F.2d 1144 (3d Cir. 1993).................................................................................9, 10

*Lum v. Bank of Am.*,
    361 F.3d 217 (3d Cir. 2004).......................................................................................5

*Melchior v. New Line Prods., Inc.*,
    131 Cal. Rptr. 2d 347 (Cal. Ct. App. 2003).............................................................12

*Minn-Chem, Inc. v. Agrium Inc.*
    657 F.3d 650 (7th Cir. 2011) ...................................................................................15

*Monsanto Co. v. Spray-Rite Svc. Corp.*,
    465 U.S. 752 (1984).....................................................................................................4

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Mushroom Direct Purchaser Antitrust Litig.*,
   No. 06-cv-0620, 2008 U.S. Dist. LEXIS 16595 (E.D. Pa. Mar. 3, 2008) ................................5

*New York v. Daicel Chem. Indus., Ltd.*,
   42 A.D.3d 301 (N.Y. App. Div. 2007) ..................................................................................19

*New York v. Daicel Chem. Indus., Ltd.*,
   No. 0403878, 2005 N.Y. Misc. LEXIS 8435 (N.Y. Sup. Ct. Aug. 9, 2005) .........................11

*In re Niaspan Antitrust Litigation*,
   42 F. Supp. 3d 735 (E.D. Pa. 2014) .......................................................................................8

*Norman's on the Waterfront, Inc. v. Wheatley*,
   317 F. Supp. 247 (D.V.I. 1970) .............................................................................................3

*In re Packaged Ice Antitrust Litig.*,
   779 F. Supp. 2d 642 (E.D. Mich. 2011)...........................................................................15, 19

*Paltre v. Gen. Motors Corp.*,
   26 A.D.3d 481 (N.Y. App. Div. 2006) ..................................................................................19

*Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla., N.A.*,
   667 So.2d 876 (Fla. Dist. Ct. App. 1996) .............................................................................16

*Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*,
   998 F.2d 1224 (3d Cir. 1993)................................................................................................6

*In re Potash Antitrust Litig.*,
   667 F. Supp. 2d 907 (N.D. Ill. 2009) .......................................................................14, 16, 17

*Precision Tracking Solutions, Inc. v. Spireon, Inc.*,
   No. 3:12-cv-00626-PLR-CCS, 2014 U.S. Dist. LEXIS 92255 (E.D. Tenn. July
   7, 2014) ...............................................................................................................................22

*In re Refrigerant Compressors Antitrust Litig.*,
   No. 2:09-md-02042, 2013 U.S. Dist. LEXIS 50737 (E.D. Mich. Apr. 9, 2013).........15, 24, 25

*Regence Blueshield v. Philip Morris, Inc.*,
   40 F. Supp. 2d 1179 (W.D. Wash. 1999)...............................................................................11

*Samiento v. World Yacht Inc.*,
   883 N.E.2d 990 (N.Y. 2008)..................................................................................................22

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*,
   263 F.R.D. 205 (E.D. Pa. 2009).......................................................................................20, 21

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Smith v. Ford Motor Co.*,
　　462 F. App'x 660 (9th Cir. 2011) ........................................................................12

*Southard v. Visa U.S.A. Inc.*,
　　734 N.W.2d 192 (Iowa 2007) ............................................................................12

*Spacesaver Corp. v. Marvel Grp., Inc.*,
　　621 F. Supp. 2d 659 (W.D. Wis. 2009) ..............................................................24

*Steamfitters Local Union No. 420 Welfare Fund v. Phillip Morris, Inc.*,
　　171 F.3d 912 (3d Cir. 1999)................................................................................11

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
　　64 F. Supp. 3d 665 (E.D. Pa. 2014) ................................................................8, 15

*Sunoptic Techs., LLC v. Integra Luxtec, Inc.*,
　　No. 3:08-cv-878-J-16JRK, 2009 U.S. Dist. LEXIS 23836 (M.D. Fla. Mar. 17,
　　2009) ...................................................................................................................14

*Superior Offshore Intern., Inc. v. Bristow Grp. Inc.*,
　　738 F. Supp. 2d 505 (D. Del. 2010)......................................................................7

*Supreme Auto Transp. LLC v. Mittal*,
　　238 F. Supp. 3d 1032 (N.D. Ill. 2017) ...........................................................11, 12

*Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air–Conditioning
Eng'rs, Inc.*,
　　No. 07-C-0765, 2011 U.S. Dist. LEXIS 159513 (E.D. Wis. Nov. 15, 2011).........24

*Thompson v. Bank of Am.*,
　　No. 7:09-CV-8we9-H, 2011 U.S. Dist. LEXIS 109660 (E.D.N.C. Feb. 24,
　　2011) ...................................................................................................................11

*Tose v. First Pennsylvania Bank, N.A.*,
　　648 F.2d 879 (3d Cir. 1981)..................................................................................6

*In re Vitamins Antitrust Litig.*,
　　No. 99–197, 2001 U.S. Dist. LEXIS 9585 (D.D.C. Apr. 10, 2001) .......................23

*In re Wellbutrin XL Antitrust Litig.*,
　　260 F.R.D. 143 (E.D. Pa. 2009).........................................................................7, 8

*In re Wellpoint, Inc., Out-of-Network UCR Rates Litig.*,
　　903 F. Supp. 2d 880 (C.D. Cal. 2012) .................................................................11

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*WrestleReunion, LLC v. Live Nation Television Holdings, Inc.*,
    No. 8:07-cv-2093, 2008 U.S. Dist. LEXIS 61428 (M.D. Fla. Aug. 4, 2008)..........................14

**Statutes**

Cal. Code Civ. Proc. § 339(1)...........................................................................................13

Miss. Code Ann. § 15-1-49...............................................................................................16

N.Y. C.P.L.R. § 214............................................................................................................20

N.Y. Gen. Bus. Law § 340(1)............................................................................................17

Tenn. Code Ann. § 28–3–105............................................................................................22

Wis. Stat. Ann. 100.18(11)(b)(3).......................................................................................25

# INTRODUCTION

In this putative class action, Plaintiffs, independent pharmacies operating in six states and purporting to represent a class of 20,000 other such pharmacies, allege that Defendants entered in to a sprawling, nationwide conspiracy to fix prices of digoxin.  By their own admission, Plaintiffs do not purchase digoxin directly from Defendants, but rather from drug wholesalers who acquire the drug directly from Defendants ("Direct Purchaser Plaintiffs" or "DPPs"). Cribbing heavily from the DPPs' class action complaint, Plaintiffs assert claims under Sections 1 and 3 of the Sherman Act and under the antitrust, consumer protection, and unjust enrichment laws of 47 various states, U.S. territories, and the District of Columbia.  But just as in the flawed complaints filed by the DPPs and End-Payer Plaintiffs ("EPPs"), Plaintiffs' allegations are insufficient to plead any of their claims.

As an initial matter, Plaintiffs' Complaint must be dismissed because it does not meet the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and its progeny.  This failure alone warrants dismissing Plaintiffs' Complaint in its entirety. *See infra* Section I.

Plaintiffs' attempt to plead duplicative state law claims similarly fails.  Plaintiffs purport to bring claims under the laws of 47 states, U.S. territories, and the District of Columbia. However, Plaintiffs admit that they are businesses located in only six of these states – California, Florida, Mississippi, New York, Tennessee, and Wisconsin – and do not allege that they purchased digoxin in any other states.  As a result, all of Plaintiffs' state law claims, except for California, Florida, Mississippi, New York, Tennessee, and Wisconsin, must be dismissed because Plaintiffs do not have standing under Article III of the U.S. Constitution to bring these claims.  *See infra* Section II.

1

Plaintiffs also lack antitrust standing because of their intermediate position in the web of transactions and relationships involved in the sale of prescription drugs. They cannot bring federal and state antitrust claims (or consumer protection or unjust enrichment claims) because their alleged injuries are both remote and speculative, and more efficient plaintiffs are available. *See infra* Sections III and IV.

As to Plaintiffs' California, Florida, Mississippi, New York, Tennessee, and Wisconsin claims, these claims must also be dismissed because Plaintiffs fail to allege certain elements that are required to state a claim under each state's relevant laws. *See infra* Sections V-X.

A summary of these bases for dismissal is provided in Appendix A.

Thus, for many of the same reasons articulated in Defendants' motions to dismiss the DPPs' and EPPs' complaints, which Defendants expressly incorporate by reference, this Court should dismiss Plaintiffs' claims.

## FACTUAL BACKGROUND

### A.     The Parties.

Defendants Impax Laboratories, Inc. ("Impax"), Lannett Company, Inc. ("Lannett"), Mylan Inc. and Mylan Pharmaceuticals, Inc. (together, "Mylan"), Par Pharmaceutical, Inc. ("Par"), and West-Ward Pharmaceuticals Corp. ("West-Ward") (collectively, "Defendants") are the same parties named in the DPP and EPP complaints. Plaintiffs are six independent pharmacies that claim to have indirectly purchased generic digoxin during the alleged class period. *See* Indirect Reseller Plaintiffs' Consolidated Class Action Complaint (Dkt. 35) ("Complaint") at ¶¶ 30-35.

### B.     Digoxin.

Digoxin is used to treat cardiac issues. Compl. ¶ 2. Plaintiffs acknowledge that at the time of the alleged digoxin price increase in October 2013, only two generic manufacturers, Lannett

and Impax were selling generic digoxin.  According to the Complaint, West-Ward re-entered the

digoxin market in April 2014. *Id*. ¶ 80.  In "early 2014," Par began selling digoxin. *Id*. ¶ 79. No

later than 2015, Mylan entered the market. *Id*. ¶ 85. ████████████████████████████

████████████████████████████

### C.     Plaintiffs' Claims.

Plaintiffs purport to represent a class of "[a]ll privately held pharmacies in the United

States and its territories that indirectly purchased" digoxin from October 1, 2013 through the

present." *Id*. ¶ 169.  The basic factual allegations contained in Plaintiffs' Complaint are the same

as those alleged in the DPPs and EPPs' complaints.  Plaintiffs do not allege any direct evidence

suggesting that the alleged price increases were the result of an actual agreement among

Defendants.  Instead, Plaintiffs rely entirely on allegations of what they contend constitutes

circumstantial evidence of a conspiracy.  The alleged circumstantial evidence includes: (1)

general market characteristics, (2) attendance at trade association events, (3) statements in

earnings calls, and (4) the existence of government investigations.

Based on these allegations, Plaintiffs allege, in conclusory fashion, that the price

increases were the result of an "unlawful agreement" among Defendants (*id*. ¶ 1) and assert

violations of: Sections 1 and 3 of the Sherman Act (First Count);[1] state antitrust statutes (Second

Count); state consumer protection statutes (Third Count); and unjust enrichment (Fourth Count).

---

[1] Section 3 extends Section 1's antitrust prohibition to U.S. territories and the District of Columbia but does not otherwise impact the antitrust analysis in this memorandum. *See Norman's on the Waterfront, Inc. v. Wheatley*, 317 F. Supp. 247, 250 (D.V.I. 1970). For this reason, Defendants refer to all of Plaintiffs' Sherman Act claims as Section 1 claims.

<u>**ARGUMENT**</u>

**I.     PLAINTIFFS' SHERMAN ACT AND STATE LAW CLAIMS MUST BE DISMISSED BECAUSE THEY FAIL TO MEET THE *TWOMBLY* PLEADING STANDARD.**

Plaintiffs assert claims under Sections 1 and 3 of the Sherman Act seeking solely injunctive relief. Compl. ¶ 188.  The same legal standard that applies to the DPPs and EPPs applies to the claims of Plaintiffs, who cannot meet it either.  To state a claim under Section 1 of the Sherman Act, a plaintiff must allege facts supporting a plausible inference that defendants conspired to unreasonably restrain trade. *See Twombly*, 550 U.S. at 556-57.  To plead the existence of such an unlawful agreement, a plaintiff must allege either (1) "direct evidence" of an unlawful agreement, or (2) sufficient parallel conduct and "circumstantial evidence that reasonably tends to prove that the [defendants] had a conscious commitment to a common scheme." *Monsanto Co. v. Spray-Rite Svc. Corp.*, 465 U.S. 752, 764 (1984).

Plaintiffs' Complaint relies on the same basic allegations of conspiracy as the DPPs and EPPs:  (1) general market characteristics; (2) participation in trade associations and customer meetings; (3) statements made during public earnings calls; and (4) the existence of government investigations.  Therefore, Defendants incorporate by reference the same arguments in their motions to dismiss the DPPs' and EPPs' complaints.  As described in detail in those briefs, Plaintiffs' allegations fail to support a plausible inference that Defendants unlawfully conspired to restrain trade and should be dismissed. *See* DPP Mem. *generally*; EPP Mem. *generally*.

Plaintiffs' state antitrust and consumer protection claims also must be dismissed on this basis.  State antitrust claims brought in federal court must meet federal pleading standards.  *See In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1025 (N.D. Cal. 2007).  Accordingly, indirect purchasers must satisfy the federal pleading standards, set forth in *Twombly*, when attempting to assert antitrust claims under state law in federal court. *See*, *e.g.*, *In*

*re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-cv-0620, 2008 U.S. Dist. LEXIS 16595, at *13-14 (E.D. Pa. Mar. 3, 2008) (applying *Twombly* standard to state law claims). Because Plaintiffs' antitrust and consumer protection claims fail to meet the *Twombly* pleading standard, Plaintiffs' state law claims also fail as a matter of law. *See In re Digital Music Antitrust Litig.*, 592 F. Supp. 2d 435, 447-51 (S.D.N.Y. 2008) (dismissing state antitrust claims where underlying federal antitrust claims failed to meet *Twombly* pleading standards); *see also* EPP Mem. at I.B.2.

Plaintiffs' state law consumer protection claims also allege an illegal price-fixing conspiracy recast as a form of unfair, unconscionable, or deceptive conduct. Those claims offer no additional facts to support the existence of a conspiracy, and must also be dismissed. *See Digital Music*, 592 F. Supp. 2d at 451 & n.25 (citing cases).

**A.     Plaintiffs Do Not Allege Direct Evidence of an Agreement to Fix Prices.**

As an initial matter, the IRP Complaint, just like the DPP and EPP complaints, fails to allege any direct evidence of a conspiracy related to digoxin. The Complaint contains no specific factual allegations demonstrating that Defendants formed an unlawful agreement regarding digoxin. Plaintiffs do not identify a single meeting, phone call, or document in which an agreement was reached. Nor do Plaintiffs identify a single employee of any Defendant who was involved in forming an unlawful digoxin agreement. Finally, Plaintiffs do not state when the alleged agreement was formed, or what it entailed. *See* DPP Mem. at Section II.A.

**B.     Plaintiffs Do Not Sufficiently Plead Circumstantial Evidence of a Conspiracy.**

Plaintiffs also fail to allege sufficient facts from which the Court could plausibly infer an agreement to fix prices of digoxin based on circumstantial evidence, *i.e.*, Plaintiffs' allegations of parallel conduct and plus factors are inadequate. *See Lum v. Bank of Am.*, 361 F.3d 217, 229-30 (3d Cir. 2004). Instead, Plaintiffs' allegations, like DPPs and EPPs' allegations, demonstrate that digoxin pricing was consistent with what would be expected to occur in a competitive

marketplace.  *See* DPP Mem. Ex. 2 at 9 (cited in Complaint at ¶ 91) (Lannett November 7, 2013

earnings call explaining that the brand "significantly raised" its price and that Lannett's price

was still "50% of the brand price in the marketplace"); ¶ 54 (FDA chart demonstrating that with

two generic manufacturers, the price of the generic should be, on average, 52% of the branded

price);  ██████████████████████████████████████████████████

████████████████████████████████████████████████  *see also* DPP

Mem. at Sections  II.B.1.a. and II.B.1.b; EPP Mem. at Section I.B.1.

      Plaintiffs' other allegations fare no better.  Plaintiffs allege that the digoxin market is

"susceptible to cartelization." Compl. ¶ 109.  But the law is clear that such allegations are

insufficient to imply the existence of an unlawful agreement.  *Burch v. Milberg Factors, Inc.*,

662 F.3d 212, 229 (3d Cir. 2011) ("Appellees' motivation of market behavior are precisely the

legally insufficient facts we have cautioned against using as circumstantial evidence of an

agreement."); *see also* DPP Mem. at Section II.B.2.

      Plaintiffs also claim that Defendants "have many opportunities to meet and conspire at

industry meetings."  Compl. ¶ 137.  But "[p]roof of opportunity to conspire, without more, will

not sustain an inference that a conspiracy has taken place." *Petruzzi's IGA Supermarkets, Inc. v.

Darling-Delaware Co.*, 998 F.2d 1224, 1235 (3d Cir. 1993) (quoting *Tose v. First Pennsylvania

Bank, N.A.*, 648 F.2d 879, 894 (3d Cir. 1981)).  Courts have universally recognized that

membership and participation in trade associations, which is all Plaintiffs allege here, do not give

rise to a plausible inference of conspiracy. *Id.*; *see also* DPP Mem. at Section II.B.3.a.

      In addition, Plaintiffs allege that statements made in public earnings calls and public

documents are evidence of collusion. Compl. ¶¶ 89-97.  Like the DPPs and EPPs, Plaintiffs

primarily rely on certain comments made by Lannett's CEO, Arthur Bedrosian, in the course of

earnings calls, discussing the competitive landscape faced by Lannett. *Id.* ¶¶ 89-96. There is nothing significant from an antitrust perspective about Bedrosian's comments, however, and nothing in Plaintiffs' allegations provides any factual basis for inferring an unlawful agreement. *See* DPP Mem. at Section II.B.3.b.

Finally, Plaintiffs rely heavily on government investigations into generic drug pricing and criminal plea agreements involving two former Heritage executives. Compl. ¶¶ 7, 12, 19, 140. But this Court and others have dismissed complaints in similar circumstances, properly holding that the mere existence of a government investigation says nothing about whether the defendants were actually conspiring. *Superior Offshore Intern., Inc. v. Bristow Grp. Inc.*, 738 F. Supp. 2d 505, 516-17 (D. Del. 2010); *see also* DPP Mem. at Section II.B.3.c. Moreover, Heritage is not a defendant in this case and has never manufactured or sold digoxin. Thus, for the same reasons set forth in the DPP Mem. and EPP Mem., Plaintiffs' Complaint must be dismissed.

## II.    PLAINTIFFS LACK ARTICLE III STANDING TO SUE UNDER THE LAWS OF EVERY STATE EXCEPT CALIFORNIA, FLORIDA, MISSISSIPPI, NEW YORK, TENNESSEE, AND WISCONSIN.

In their Second, Third, and Fourth Counts, Plaintiffs assert antitrust, consumer protection, and/or unjust enrichment claims under the laws of 44 states, the District of Columbia, Puerto Rico, and the U.S. Virgin Islands. Compl. ¶¶ 189-267. But all of these claims, except those brought under California, Florida, Mississippi, New York, Tennessee, and Wisconsin law, must be dismissed with prejudice because Plaintiffs do not have Article III standing to assert them.

Under Article III of the U.S. Constitution, Plaintiffs can bring state law claims in federal court *only* if a named plaintiff resided in, or purchased or made reimbursements for the generic drug, in the state whose laws they seek to invoke. *See, e.g.*, *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 151-58 (E.D. Pa. 2009). It is Plaintiffs' burden to allege facts sufficient to demonstrate standing to bring each discrete claim. *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th

Cir. 1987) ("[I]t is not enough that a named plaintiff can establish a case or controversy . . . by virtue of having standing as to just one of many claims he wishes to assert. Rather, each claim must be analyzed separately . . . ."); *Wellbutrin*, 260 F.R.D. at 151 ("A plaintiffs' standing to sue must be analyzed on the basis of *each* claim asserted.") (emphasis added). The fact that Plaintiffs seek to represent a class does not alter this burden or justify deferring the question until class certification. *See* EPP Mem. at Section II.

Accordingly, Courts have routinely dismissed indirect purchaser claims, holding that named plaintiffs do not have standing to bring their purported claims under the laws of states where they are not located and did not make any purchases. *See, e.g.*, *Wellbutrin*, 260 F.R.D. at 156-58; *In re Niaspan Antitrust Litigation*, 42 F. Supp. 3d 735, 758-59 (E.D. Pa. 2014); *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litigation*, 64 F. Supp. 3d 665, 692-94 (E.D. Pa. 2014); *see also* EPP Mem. at Section II.

Here, Plaintiffs admit that they are businesses located in only six states. Compl. ¶¶ 30-35. Plaintiffs do not claim to have purchased digoxin in any other state. *Id.* As a result, all of Plaintiffs' state law claims except those that arise under California, Florida, Mississippi, New York, Tennessee, and Wisconsin law must be dismissed.[2]

## III.   PLAINTIFFS' ANTITRUST CLAIMS MUST ALSO BE DISMISSED BECAUSE PLAINTIFFS LACK ANTITRUST STANDING UNDER *ASSOCIATED GENERAL CONTRACTORS*.

Plaintiffs' antitrust claims should be dismissed for the further reason that Plaintiffs lack antitrust standing under the laws of all 26 jurisdictions at issue. This threshold requirement determines whether a given plaintiff is the "proper party to bring an antitrust claim," *Barton &*

---

[2] The Court should dismiss all of Plaintiffs' state law claims except in California, Florida, Mississippi, New York, Tennessee, and Wisconsin on this basis alone. In the alternative, however, Defendants have set forth additional reasons why each of Plaintiffs' state law claims should fail in their motion to dismiss the EPP complaint and expressly incorporate those arguments by reference. *See* Appendix A to EPP Mem. and EPP Mem. filed concurrently with this brief.

*Pittinos, Inc. v. SmithKline Beecham Corp.*, 118 F.3d 178, 181 (3d Cir. 1997), and turns on

certain factors laid out by the Supreme Court in *Associated General Contractors of California v.*

*California State Council of Carpenters*, 459 U.S. 519 (1983) (hereinafter "*AGC*"), three of which

are of particular relevance here: (i) "the existence of more direct victims of the alleged antitrust

violation"; (ii) "the directness of the injury," which consideration seeks to reduce the risk of

"speculative claims"; and (iii) "the potential for duplicative recovery or complex apportionment

of damages."  *Barton*, 118 F.3d at 181 (quoting *In re Lower Lake Erie Iron Ore Antitrust Litig.*,

998 F.2d 1144, 1165-66 (3d Cir. 1993)).  Here, all three factors weigh against a finding of

standing.

First, there are plainly "more direct victims" of the alleged price-fixing conspiracy than

Plaintiffs: the wholesalers who directly purchased digoxin from Defendants during the putative

Class Period.  *See* Compl. ¶  24 ("Independent pharmacies rarely purchase generic drugs directly

from the manufacturer, and instead acquire drugs almost exclusively from drug wholesalers such

as McKesson Corp., Cardinal Health Inc., or Amerisource Bergen Corp."); ¶ 88 ("A

manufacturer first sells the drug to direct purchaser wholesalers . . . .").  These direct purchasers

are part of the putative class that has also brought antitrust claims against Defendants based on

exactly the same conduct as alleged here by Plaintiffs (in largely verbatim terms).  *See* DPP

Complaint.  This factor alone substantially "diminishes the justification for allowing a more

remote party" to bring a private antitrust action because denial of recovery to Plaintiffs "is not

likely to leave a significant antitrust violation undetected or unremedied."  *AGC*, 459 U.S. at 542.

Second, as middlemen in the generic drug distribution chain, Plaintiffs concede that they

purchase digoxin from drug wholesalers, who impose a markup, *see* Comp. ¶ 24, and that they

on-sell digoxin to end-payer consumers – presumably at a markup as well – who "pay the full

retail price," *id.* ¶ 57.  As such, Plaintiffs' claims here are highly speculative.  Significantly, Plaintiffs allege that the "overcharges resulting from Defendants' conduct are directly traceable through the pharmaceutical distribution chain to the independent pharmacies," Compl. ¶ 24, yet they do not allege that Plaintiffs did not themselves pass through these purported overcharges to their own customers.[3]  To the extent Plaintiffs <u>did</u> in fact pass through these overcharges, they have failed to establish yet another *AGC* factor, a "causal connection between the antitrust violation and the harm to the plaintiff."  *Barton*, 118 F.3d at 181 (quoting *In re Lower Lake Erie*, 998 F.2d at 1165-66).

Finally, the risk of duplicative damages here is high, and the task of attempting to apportion damages will be exceedingly complex, if even feasible.  As previously noted, Plaintiffs (and the putative class they seek to represent) are middlemen in the generic drug distribution chain: they buy from wholesalers and sell to consumers.  Determining how much of any purported supracompetitive overcharge was absorbed or passed through at any given level would be challenging enough; factoring discounts, rebates, and the terms of individual arrangements between pharmacists and third-party payers and/or Pharmacy Benefit Managers, *see* Compl. ¶¶ 60-61, would reduce the task of apportioning damages to an exercise in speculation and greatly increase the likelihood of duplicative recovery.  Because Plaintiffs have not alleged, and cannot establish, antitrust standing under *AGC*, their claims must be dismissed.  *See* EPP Mem. at Section III.A.

---

[3] In fact, in their complaint, the end-payer purchasers of Defendants' digoxin allege that overcharges *are* passed on to them.  *See* EPP Compl. ¶ 196  ("[T]he institutional structure of pricing and regulation in the pharmaceutical drug industry assures [sic] that overcharges at the higher level of distribution are passed on to end-payers such as Plaintiffs.  *Wholesalers and retailers passed on the inflated [digoxin] prices to Plaintiffs and members of the class.*") (emphasis added).

IV.   **PLAINTIFFS' CONSUMER FRAUD AND UNJUST ENRICHMENT CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFFS FAILED TO PLEAD PROXIMATE CAUSATION.**

Plaintiffs' consumer fraud and unjust enrichment claims also fail for remoteness.

Plaintiffs are required to plead proximate causation as an element of their consumer fraud claims.

*See, e.g., Supreme Auto Transp. LLC v. Mittal*, 238 F. Supp. 3d 1032, 1037, 1041-43 (N.D. Ill.

2017) (dismissing indirect purchasers' consumer protection and unjust enrichment claims under

"each of the fifty states, excluding Ohio and Indiana, and including the District of Columbia" for

lack of proximate cause because *AGC* factors were not satisfied).[4]   Plaintiffs' naked allegations

that they have been injured as a "direct and proximate result" of Defendants' conduct (Compl. ¶

193) are insufficient.  *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210-11 (3d Cir. 2009) (holding

that a court "may disregard any legal conclusions" and that "a complaint must do more than

allege the plaintiff's entitlement to relief . . . [it] has to 'show' such an entitlement with its

facts").

As *AGC* developed out of common law proximate cause principles,[5] the same reasoning

applies to preclude Plaintiffs' unjust enrichment claims. *Steamfitters Local Union No. 420*

*Welfare Fund v. Phillip Morris, Inc.*, 171 F.3d 912, 937 (3d Cir. 1999) ("We can find no

justification for permitting plaintiffs to proceed on their unjust enrichment claim once we have

---

[4] *Accord In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09-cv-3690, 2015 U.S. Dist. LEXIS 84152 (N.D. Ill. June 29, 2015) (dismissing consumer protection claims under Arkansas, California, Florida, and North Carolina law as too remote); *In re Wellpoint, Inc., Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 908, 927-28 (C.D. Cal. 2012) (holding that dismissal of remote plaintiff's Sherman Act claims for lack of antitrust standing required dismissal of California consumer protection claim predicated on same allegations); *Thompson v. Bank of Am.*, No. 7:09-CV-8we9-H, 2011 U.S. Dist. LEXIS 109660, at *37 (E.D.N.C. Feb. 24, 2011) (dismissing NCUDTPA claim for failure to adequately plead proximate causation); *In re Fla. Cement & Concrete Antitrust Litig.*, 746 F. Supp. 2d 1291, 1322 (S.D. Fla. 2010) (dismissing indirect purchasers' FDUTPA claim for failure to adequately plead proximate causation); *New York v. Daicel Chem. Indus., Ltd.*, No. 0403878, 2005 N.Y. Misc. LEXIS 8435, at *23-28 (N.Y. Sup. Ct. Aug. 9, 2005) (dismissing remote consumers' claim under § 349 based on *AGC* factors); *Regence Blueshield v. Philip Morris, Inc.*, 40 F. Supp. 2d 1179, 1181, 1185 (W.D. Wash. 1999) (dismissing remote plaintiffs' Montana consumer protection claim for lack of proximate causation).

[5] *See AGC*, 459 U.S. at 532-33; *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09-cv-3690, 2013 U.S. Dist. LEXIS 119662, at *42-43 (N.D. Ill. Aug. 23, 2013).

determined that the District Court properly dismissed the traditional tort claims because of the remoteness of plaintiffs' injuries from defendants' wrongdoing");  *see also, e.g.*, *Southard v. Visa U.S.A. Inc.*, 734 N.W.2d 192, 199-200 (Iowa 2007) (dismissing Iowa unjust enrichment claim because "this common-law theory is subject to the common-law rule that bars recovery for remote injuries").  Thus, due to the remote nature of their alleged injuries, Plaintiffs cannot state a claim for consumer fraud or unjust enrichment and those claims must be dismissed. *See Supreme Auto Transp.*, 238 F. Supp. 3d at 1041-43 (dismissing indirect purchasers' consumer protection and unjust enrichment claims for lack of proximate cause because *AGC* factors were not satisfied).

## V.   PLAINTIFFS' CALIFORNIA STATE LAW CLAIMS MUST BE DISMISSED.

Plaintiffs allege antitrust, consumer protection, and unjust enrichment claims under California law.  As described above, Plaintiffs' California antitrust claim should be dismissed under *AGC* and the consumer protection and unjust enrichment claims should be dismissed for lack of proximate causation.  In addition, the California unjust enrichment claim should be dismissed for the additional reasons below.

### A.   Unjust Enrichment is Not a Cause of Action in California.

First, Plaintiffs' claim for unjust enrichment under California law should be dismissed because California recognizes unjust enrichment only as a remedy, not a standalone cause of action. *See Hill v. Roll Int'l Corp.*, 128 Cal. Rptr. 3d 109, 118 (Cal. Ct. App. 2011) ("Unjust enrichment is not a cause of action, just a restitution claim.");  *Melchior v. New Line Prods., Inc.*, 131 Cal. Rptr. 2d 347, 357 (Cal. Ct. App. 2003) ("[T]here is no cause of action in California for unjust enrichment.");  *Smith v. Ford Motor Co.*, 462 F. App'x 660, 665 (9th Cir. 2011) ("Plaintiffs also appeal the district court's ruling that unjust enrichment is not an independent cause of action in California. This argument has no merit.").

12

**B.      Plaintiffs' Unjust Enrichment Claim is Time Barred.**

Second, Plaintiffs' unjust enrichment claim fails because to the extent that an unjust enrichment claim can be brought in California (and as described above, it cannot), a two-year statute of limitations would apply.  *See* Cal. Code Civ. Proc. § 339(1) ("Within two years: 1. An action upon a contract, obligation or liability not founded upon an instrument of writing, except as provided in Section 2725 of the Commercial Code or subdivision 2 of Section 337 of this code . . .").  Here, Plaintiffs did not file their first complaint until March 3, 2017, more than 3 years after the October 2013 digoxin price increase and the public earnings calls reporting that Impax had raised prices "following Lannett's pricing action."  Compl. ¶ 97.  As a result, Plaintiffs' California unjust enrichment claim is time barred.

## VI.      PLAINTIFFS' FLORIDA STATE LAW CLAIMS MUST BE DISMISSED.

Recognizing that Florida does not permit indirect purchaser antitrust actions, Plaintiffs only allege consumer protection and unjust enrichment claims under Florida law.  As described above, Plaintiffs' Florida consumer protection and unjust enrichment claims should be dismissed for lack of proximate causation.  In addition, there are several independent reasons why these claims fail.

**A.      Plaintiffs Cannot Circumvent *Illinois Brick* by Alleging Violations of Florida's Consumer Protection Law or Unjust Enrichment.**

First, Plaintiffs' Florida claims must be dismissed because they are improper attempts to circumvent *Illinois Brick*.  *Illinois Brick* bars antitrust claims by indirect purchasers.  *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 746-47 (1977).  Florida has not passed an *Illinois Brick* repealer law, so courts have held that antitrust claims by indirect purchasers are not permitted under Florida's antitrust statutes.  *California v. Infineon Techs. AG*, 531 F. Supp. 2d 1124, 1144-45 (N.D. Cal. 2007) (dismissing plaintiffs' Florida indirect purchaser claims because "Florida's

Antitrust Act prohibits indirect purchaser standing").  Plaintiffs evidently know this since they did not assert a Florida antitrust claim in the Second Count of their Complaint.  Compl. fn. 93, p. 62.  Plaintiffs cannot circumvent this limitation by dressing up their antitrust claim as a consumer protection claim.  *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09-cv-3690, 2015 U.S. Dist. LEXIS 84152, at \*59-61 (N.D. Ill. June 29, 2015) (dismissing indirect purchaser claims under the Florida Deceptive and Unfair Trade Practices Act as either barred by *Illinois Brick* or for remoteness).  Nor can Plaintiffs circumvent this limitation by recasting their claim as one for unjust enrichment.  *See In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d 1155, 1175 (N.D. Cal. 2015) (dismissing unjust enrichment claim under Florida law because plaintiffs "cannot make an 'end run' around *Illinois Brick* by relying on [their] unjust enrichment claim for states that have not enacted an *Illinois Brick* repealer statute . . .").  Accordingly, Plaintiffs' consumer protection and unjust enrichment claims under Florida law must be dismissed.

### B. Plaintiffs' Florida Consumer Protection Claim Fails Because Plaintiffs' Fail to Plead Unconscionable, Unfair, or Deceptive Conduct.

To state a claim under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204 ("FDUTPA"), a plaintiff must plead with the particularity required by Federal Rule 9(b) conduct that is unconscionable, unfair, or deceptive.  *WrestleReunion, LLC v. Live Nation Television Holdings, Inc.*, No. 8:07-cv-2093, 2008 U.S. Dist. LEXIS 61428, at \*7-8 (M.D. Fla. Aug. 4, 2008);  *see also Sunoptic Techs., LLC v. Integra Luxtec, Inc.*, No. 3:08-cv-878-J-16JRK, 2009 U.S. Dist. LEXIS 23836, \*5 (M.D. Fla. Mar. 17, 2009) ("Like fraud, a claim pursuant to the FDUTPA . . . must [] meet the heightened pleading standard under Rule 9(b).").  Pursuant to Rule 9(b), a plaintiff must plead "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff."  *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 947

14

(N.D. Ill. 2009), *vacated and remanded on other grounds by Minn-Chem, Inc. v. Agrium Inc.*, 657 F.3d 650 (7th Cir. 2011).  Moreover, "[i]n a case involving multiple defendants, the complaint should inform each defendant of the nature of their alleged participation in the fraud." *Id*.  Here, Plaintiffs have not satisfied the heightened pleading requirement of Rule 9(b), and the Court should dismiss their FDUTPA claims.  *See, e.g.*, *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-md-02042, 2013 U.S. Dist. LEXIS 50737, at *67-69 (E.D. Mich. Apr. 9, 2013) (dismissing FDUTPA claim on price-fixing theory for failure to plead with requisite Rule 9(b) particularity); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 665 (E.D. Mich. 2011) (same).

### C.    Plaintiffs' Unjust Enrichment Claim Also Fails Because Florida Requires that Plaintiffs Confer a Direct Benefit on Defendants.

To recover for unjust enrichment under Florida law, Plaintiffs must confer a benefit directly on the Defendants.  *See In re Suboxone Antitrust Litig.*, 64 F. Supp. 3d 665, 705-06 (E.D. Pa. 2014) ("Florida law requires that a benefit be conferred upon the defendant directly in order to state a claim for unjust enrichment."); *Kopel v. Kopel,* 117 So.3d 1147, 1152 (Fla. Dist. Ct. App. 2013) ("Unjust enrichment requires that the benefit be direct to the litigant "); *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 544 (E.D. Pa. 2010) ("Florida law is clear; it requires that a plaintiff confer a direct benefit upon a defendant in order to state a claim for unjust enrichment.").  Here, however, Plaintiffs do not allege that they dealt directly with any Defendant.  In fact, Plaintiffs concede that they purchased digoxin "indirectly." Compl. ¶¶ 30-35. By definition, indirect purchasers cannot confer a direct benefit on any Defendant.  Plaintiffs' unjust enrichment claim, therefore, fails on its own terms and must be dismissed.  *See e.g.*, *Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So.3d 400, 404 (Fla. Dist. Ct. App. 2009) (affirming dismissal of unjust enrichment claim for failure to allege direct benefit

conferred upon defendant); *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So.2d 322, 331 (Fla. Dist. Ct. App. 2007) (reversing award of damages under unjust enrichment claim because plaintiffs claiming unjust enrichment "must show they directly conferred a benefit on the defendants."); *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla., N.A.*, 667 So.2d 876, 879 (Fla. Dist. Ct. App. 1996) (affirming dismissal of unjust enrichment claim because "the plaintiff . . . could not and did not allege that it had directly conferred a benefit on the defendants."); *Dairy Farmers*, 2015 U.S. Dist. LEXIS 84152, at *65-70 (dismissing Florida unjust enrichment claim for lack of direct benefit); *Potash*, 667 F. Supp. 2d at 948 (same).

## VII.   PLAINTIFFS' MISSISSIPPI CLAIMS MUST BE DISMISSED.

Plaintiffs allege antitrust and unjust enrichment claims under Mississippi law.  As described above, Plaintiffs' Mississippi antitrust law claims should be dismissed under *AGC* and the unjust enrichment claim should be dismissed for lack of proximate causation.  In addition, the Mississippi antitrust and unjust enrichment claim should be dismissed for the additional reasons set forth below.

### A.   The Mississippi Antitrust and Unjust Enrichment Claims are Time Barred.

As an initial matter, Plaintiffs' Mississippi claims are time barred.  Mississippi has a three-year statute of limitations that applies to antitrust and unjust enrichment claims.  *See* Miss. Code Ann. § 15-1-49 ("All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after."); *Carder v. BASF Corp.*, No. Civ. A. 021069, 2003 WL 25267524, at *1 (Miss. Ch. Nov. 19, 2003) (applying the three-year statute of limitations to claim under Mississippi antitrust law), *aff'd*, 919 So. 2d 258 (Miss. Ct. App. 2005).  Here, Plaintiffs did not file the first complaint until March 3, 2017, more than 3 years after the October 2013 digoxin price increase and the public earnings calls reporting that Impax had raised prices "following Lannett's pricing action."

16

Compl. ¶ 97.  Plaintiffs' antitrust and unjust enrichment claims under Mississippi law are therefore time barred and must be dismissed.

### B.      Unjust Enrichment is Not a Cause of Action Under Mississippi Law.

In addition, Plaintiffs' claim for unjust enrichment under Mississippi law should be dismissed because Mississippi only recognizes unjust enrichment as a remedy, not a standalone cause of action.  *Potash*, 667 F. Supp. 2d at  948 (quoting *Cole v. Chevron USA, Inc*., 554 F. Supp. 2d 655, 671 (S.D. Miss. 2007)) ("Under Mississippi law, unjust enrichment is not an independent theory of recovery.");  *see also In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09-md-2087, 2011 U.S. Dist. LEXIS 60523, at *42-43 (S.D. Cal. May 24, 2011).

## VIII.   PLAINTIFFS' CLAIMS UNDER NEW YORK LAW SHOULD BE DISMISSED.

Plaintiffs allege antitrust, consumer protection, and unjust enrichment claims under New York law.  As described above, Plaintiffs' New York antitrust law claim should be dismissed under *AGC* and the consumer protection and unjust enrichment claims should be dismissed for lack of proximate causation.  In addition, Plaintiffs' New York claims should be dismissed for the additional reasons described below.

### A.      Plaintiffs' New York Antitrust Claim Fails Because Plaintiffs do Not Allege Sufficient Intrastate Activity.

Plaintiffs' New York antitrust claim additionally fails because New York's antitrust statute, the Donnelly Act, applies only to intrastate activity that has a substantial effect within the state – and not to a broadly alleged nationwide conspiracy such as that alleged by Plaintiffs. N.Y. Gen. Bus. Law § 340(1); *H-Quotient, Inc. v. Knight Trading Grp., Inc.*, No. 03-cv-5889, 2005 U.S. Dist. LEXIS 1924, at *12-14 (S.D.N.Y. Feb. 7, 2005); *In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, No. 1:14-md-2508, 2015 U.S. Dist. LEXIS 121620, at *69-70 (E.D. Tenn. June 24, 2015) (Donnelly Act was modeled on Sherman Act and is generally to be

construed in accordance with federal precedents; but unlike Sherman Act, it only applies to conduct within New York state); *Conergy AG v. MEMC Elec. Materials, Inc.*, 651 F. Supp. 2d 51, 61-62 (S.D.N.Y. 2009) (dismissing Donnelly Act claim where complaint was "devoid of any specific factual allegations" demonstrating effect on New York intrastate commerce).

Plaintiffs allege in conclusory terms that "Defendants' illegal conduct substantially affected [each state's] commerce." Compl. ¶¶ 197-249. However, Plaintiffs fail to allege any specific allegations or facts connecting the alleged conduct to New York and do not allege that Defendants' conduct took place within New York. Such allegations are insufficient to survive a motion to dismiss. *See Cast Iron*, 2015 U.S. Dist. LEXIS 121620, at *74-75 (dismissing antitrust claims under New York law because plaintiffs failed to allege a sufficient nexus to intrastate commerce where they alleged the price-fixing scheme impacted the "entire [product] market" and "impacted commerce nationwide"). Without specific allegations or facts connecting the alleged conduct to New York, this Court should dismiss Plaintiffs' New York antitrust claim.

**B.      Plaintiffs' New York Consumer Protection Claim Fails as a Matter of Law.**

   1.      Plaintiffs Fail To Allege Deceptive Conduct as Required Under New York Law.

Plaintiffs' New York consumer protection claim cannot survive either. Section 349 of New York's General Business Law requires "deceptive conduct" and "does not cover price-fixing or other antitrust violations" absent deception. *In re Aftermarket Filters Antitrust Litig.*, MDL No. 1957, 2009 U.S. Dist. LEXIS 104114, at *39-40 (N.D. Ill. Nov. 5, 2009); *accord Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 3 N.Y.3d 200, 205-06 (2004); *In re Lamictal Indirect Purchaser & Antitrust Consumer Litig.*, 172 F. Supp. 3d 724, 752-53 (D.N.J. 2016) (finding that indirect purchaser failed to state a New York consumer protection claim because the plaintiffs merely alleged anticompetitive conduct and not deceptive conduct); *Digital*

*Music*, 812 F. Supp. 2d at 410 (S.D.N.Y. 2011) (dismissing indirect purchaser New York

consumer protection claims because "anticompetitive conduct that is not premised on consumer

deception is not within the ambit of the statute" and "failure to disclose participation in a

purported antitrust conspiracy" is an insufficient allegation of deception); *Packaged Ice*, 779 F.

Supp. 2d at 666-67 (dismissing New York consumer protection claims because indirect

purchaser plaintiffs failed "to plead with specificity the allegedly deceptive acts or practices that

form the basis of [the] claim" and noting that the statutory language "indicates that

anticompetitive conduct that is not premised on consumer deception is not within the ambit of

the statute"); *In re Automotive Refinishing Paint Antitrust Litig.*, 515 F. Supp. 2d 544, 555 (E.D.

Pa. 2007) (finding that "mere anticompetitive conduct alone does not constitute deceptive

conduct under § 349 and that to come within the scope of the statute, the [c]omplaint must allege

some additional deception or misrepresentation").  Here, Plaintiffs have not made any non-

conclusory allegations suggesting any kind of deceptive conduct.  Absent plausible allegations

that Defendants engaged in deception, Plaintiffs cannot state a claim under New York's

consumer protection law.

Moreover, even if Plaintiffs alleged deception, federal and state courts have routinely

dismissed price-fixing claims brought under the New York consumer protection statute where

plaintiffs alleged deceptive acts *not targeted at consumers*.  *See Automotive Refinishing Paint*,

515 F. Supp. 2d at 552-54 ("New York courts . . . have consistently held that when the conduct at

issue is between two companies and does not involve the ultimate consumer, it cannot be the

basis of a claim under §349."); *New York v. Daicel Chem. Indus., Ltd.*, 42 A.D.3d 301, 303 (N.Y.

App. Div. 2007); *Paltre v. Gen. Motors Corp.*, 26 A.D.3d 481, 483 (N.Y. App. Div. 2006).

Here, Plaintiffs do not allege any specific misrepresentations or deception, let alone any targeted

at consumers.  Their claims under the New York consumer protection statute must, therefore, be dismissed.

2.      Plaintiffs Fail to Sufficiently Allege In-State Injury.

In addition, Plaintiffs' New York consumer protection claim must be dismissed because New York's consumer protection law requires claims to arise from purely or primarily intrastate conduct – the same rule that applies for New York antitrust claims, *see supra* Section VIII.A.  In particular, New York's consumer protection statute only applies if "the transaction in which the consumer is deceived [] occur[s] in New York." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324-25 (2002); *see also Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 263 F.R.D. 205, 214 (E.D. Pa. 2009) (dismissing plaintiffs' claim under New York consumer protection statute because plaintiffs' allegations of deception did not take place in New York.).  As described above, Plaintiffs here do not allege any conduct that took place in New York.  For this reason, this Court should dismiss Plaintiffs' New York consumer protection claim.

3.      The New York Consumer Protection and Unjust Enrichment Claims are Time Barred.

Plaintiffs' New York consumer protection and unjust enrichment claims should also be dismissed because they are time barred.  A three-year statute of limitations applies to both consumer protection and unjust enrichment claims under New York law.  *See* N.Y. C.P.L.R. § 214(2) (three-year statute of limitations); *Lamictal*, 172 F. Supp. 3d at 742 (applying three-year statute of limitations to consumer protection claim); *Kaufman v. Cohen*, 307 A.D.2d 113, 127 (N.Y. App. Div. 2003) ("[A] claim for unjust enrichment accrues upon the occurrence of the alleged wrongful act giving rise to restitution."); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 (NRB), 2015 U.S. Dist. LEXIS 149629, at *101 (S.D.N.Y. Nov. 3,

2015) ("Further, New York does not apply a discovery rule to unjust enrichment.").  Here, Plaintiffs did not file the first complaint until March 3, 2017, more than 3 years after the October 2013 digoxin price increase.  As a result, Plaintiffs' New York consumer protection and unjust enrichment claims are time barred.

### C.   Plaintiffs' New York Unjust Enrichment Claim Fails As A Matter of Law.

Like their state antitrust and consumer protection claims, Plaintiffs' New York unjust enrichment claims also fail as a matter of law for reasons beyond their failure to allege an agreement to raise prices.

### 1.   New York Law Requires that Plaintiffs Confer a Direct Benefit on Defendants.

New York only permits unjust enrichment claims where plaintiffs conferred a benefit directly on the defendant.  *See Sheet Metal Workers,* 263 F.R.D. at 216 (dismissing indirect purchasers' unjust enrichment claims under New York law because they did not confer a direct benefit on defendant).  Here, Plaintiffs do not allege that they directly dealt with any Defendant. In fact, Plaintiffs concede that they purchased digoxin "indirectly."  Compl. ¶¶ 30-35.  By definition, *indirect* purchasers cannot confer a *direct* benefit on any Defendant.  Plaintiffs' unjust enrichment claim under New York, therefore, fails.

### 2.   Plaintiffs Fail to Allege They Lack an Adequate Legal Remedy.

In addition, Plaintiffs' unjust enrichment claim under New York law would fail because Plaintiffs claim in conclusory fashion that they have "no adequate remedy at law," when in fact they plead alternative antitrust and consumer protection claims.  Even if the Court finds that Plaintiffs have failed to sufficiently plead the alternative claims, Plaintiffs' unjust enrichment claim under New York law still fails.  *See, e.g., Dooner v. Yuen,* No. 16-1939, 2016 U.S. Dist. LEXIS 143455, at *8-9 (D. Minn. Oct. 17, 2016).  Accordingly, Plaintiffs' duplicative unjust

enrichment claim must be dismissed. *Samiento v. World Yacht Inc.*, 883 N.E.2d 990, 996 (N.Y. 2008) ("As to plaintiffs' third cause of action for unjust enrichment, this action does not lie as plaintiffs have an adequate remedy at law and therefore this claim was likewise properly dismissed").

## IX.    PLAINTIFFS' TENNESSEE CLAIMS SHOULD BE DISMISSED.

Plaintiffs allege antitrust and unjust enrichment claims under Tennessee law.  As described above, Plaintiffs' Tennessee antitrust law claim should be dismissed under *AGC* and the unjust enrichment claim should be dismissed for lack of proximate causation.  In addition, the Tennessee claims should be dismissed for the additional reasons set forth below.

### A.    The Tennessee Antitrust and Unjust Enrichment Claims Are Time Barred.

Plaintiffs' antitrust and unjust enrichment claims under Tennessee law are also time barred.  Tennessee has a three-year statute of limitations that applies to antitrust and unjust enrichment claims.  *See* Tenn. Code Ann. § 28–3–105; *Precision Tracking Solutions, Inc. v. Spireon, Inc.*, No. 3:12-cv-00626-PLR-CCS, 2014 U.S. Dist. LEXIS 92255, at *9-12 (E.D. Tenn. July 7, 2014) (holding that Tenn. Code Ann. § 28-3-105 governed unjust enrichment claims). Here, Plaintiffs did not file their first complaint until March 3, 2017, more than 3 years after the October 2013 digoxin price increase and the public earnings calls reporting that Impax had raised prices "following Lannett's pricing action."  Compl. ¶ 97.  As a result, Plaintiffs' antitrust and unjust enrichment claims under Tennessee law are time barred.

### B.    The Unjust Enrichment Claim under Tennessee Law Fails as a Matter of Law.

Plaintiffs' unjust enrichment claims under Tennessee law also fail for the reasons discussed below.

     1.     <u>Tennessee Law Requires that Plaintiffs Confer a Direct Benefit on Defendants</u>.

To recover for unjust enrichment under Tennessee law, a plaintiff must confer a benefit directly on the defendants. *See In re Vitamins Antitrust Litig*., No. 99–197, 2001 U.S. Dist. LEXIS 9585, at *45 (D.D.C. Apr. 10, 2001) (dismissing Tennessee unjust enrichment claim by indirect purchaser due to a "lack of facts supporting a finding of direct benefit conferred upon Defendants by Plaintiff"). Here, however, Plaintiffs do not allege that they dealt directly with any Defendant. In fact, Plaintiffs concede that they purchased digoxin "indirectly." Compl. ¶¶ 30-35. By definition, *indirect* purchasers cannot confer a *direct* benefit on any Defendant. Plaintiffs' unjust enrichment claims under Tennessee law, therefore, fail on their own terms.

     2.     <u>Plaintiffs Have Failed to Plead Exhaustion of Remedies</u>.

To recover for unjust enrichment under Tennessee law, a plaintiff must demonstrate that he or she has exhausted all remedies against the party with whom the plaintiff is in privity. *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005); *see also, e.g.*, *D.R. Ward. Const. Co. v. Rohm & Haas Co*., 470 F. Supp. 2d 485, 509 (E.D. Pa. 2006) (dismissing Tennessee unjust enrichment claim because plaintiffs failed to allege "that, prior to filing suit against defendants, plaintiffs pursued remedies against the parties from which plaintiffs purchased" the allegedly price-fixed product). Plaintiffs have alleged no facts suggesting that they sought to recover damages from the wholesalers from whom they purchased their products. As a result, their claim must be dismissed.

     3.     <u>Plaintiffs Do Not Lack An Adequate Legal Remedy</u>.

Plaintiffs' unjust enrichment claim under Tennessee law also fails because Plaintiffs do not lack an adequate legal remedy. Tennessee law prevents plaintiffs from pleading an unjust enrichment claim if they have an adequate remedy at law. *See Furlough v. Spherion Atl.*

*Workforce, LLC,* 397 S.W.3d 114, 134 (Tenn. 2013) (holding that equitable relief is unavailable

unless plaintiff can show "there is no other available or adequate remedy").  This rule applies

even if the Court finds that Plaintiffs have failed to sufficiently plead the alternative claims. *See*

*Dooner,* 2016 U.S. Dist. LEXIS 143455, at *8-9.  Accordingly, Plaintiffs' duplicative unjust

enrichment claim must be dismissed.

**X.     PLAINTIFFS' WISCONSIN CLAIMS SHOULD BE DISMISSED.**

Plaintiffs allege antitrust, consumer protection, and unjust enrichment claims under

Wisconsin law.  As described above, Plaintiffs' Wisconsin antitrust law claim should be

dismissed under *AGC* and the consumer protection and unjust enrichment claims should be

dismissed for lack of proximate causation.  In addition, the Wisconsin claims should be

dismissed for the additional reasons below.

**A.     Plaintiffs' Consumer Protection Claim Should be Dismissed Because They
         Fail to Plead Deceptive Conduct or Reliance on a False Statement.**

Plaintiffs must plead deceptive conduct or reliance on a false statement to sustain a

consumer protection claim in Wisconsin.  *Refrigerant Compressors*, U.S. Dist. LEXIS 50737, at

*69-71 (dismissing Wisconsin consumer protection claim brought under wrong section of

statute, but adopting by implication Defendants' argument that amendment to cite correct statute

would be futile because plaintiffs alleged no "deceptive marketing" in Wisconsin); *see also*

*Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air–Conditioning Eng'rs, Inc.*,

No. 07-C-0765, 2011 U.S. Dist. LEXIS 159513, at *5-7 (E.D. Wis. Nov. 15, 2011) (dismissing

Wisconsin Deceptive Trade Practices Act claim for failure to plead reliance on a false statement

or representation); *Spacesaver Corp. v. Marvel Grp., Inc.*, 621 F. Supp. 2d 659, 663 (W.D. Wis.

2009) (under Wisconsin statute, the relevant question "is whether [defendant's] representation

materially *induced the plaintiff's decision to act* and whether the plaintiff would have acted in

the absence of the representation") (emphasis in original).  Here, Plaintiffs do neither.  Rather, the facts Plaintiffs do allege show that the opposite is true.  For example, the Complaint states that price for digoxin is inelastic (i.e., price has little effect on demand) and the drug lacks substitutes. Compl. ¶¶ 122-131.  Thus, by Plaintiffs' own admission, the price of digoxin was not material to their decisions to purchase the drug, and they did not rely on Defendants' representations when buying the drug.  *See, e.g.*, *Jones v. ConAgra Foods, Inc.*, No. C 12-01633, 2014 U.S. Dist. LEXIS 81292, at \*65-66 (N.D. Cal. June 13, 2014) (finding plaintiffs failed to show materiality because they would have purchased products despite defendant's representations).

**B.    Plaintiffs' Wisconsin Consumer Protection Claim is Time Barred.**

A three-year statute of limitations applies to consumer protection claims under Wisconsin law.  *See* Wis. Stat. Ann. 100.18(11)(b)(3) ("No action may be commenced under this section more than 3 years after the occurrence of the unlawful act or practice which is the subject of the action."); *Kain v. Bluemound E. Indus. Park, Inc.*, 635 N.W.2d 640, 645 (Wis. Ct. App. 2001) (citations omitted) (emphasis in original) (holding that under Wis. Stat. Ann. 100.18(11)(b)(3), "a cause of action must be commenced within a specified amount of time after the defendant's action which allegedly led to injury, *regardless of whether the plaintiff has discovered the injury or wrongdoing*.").  Here, Plaintiffs did not file the first complaint until March 3, 2017, more than 3 years after the October 2013 digoxin price increase.  As a result, Plaintiffs' Wisconsin consumer protection claim is time barred.

**C.    Wisconsin Law Requires that Plaintiffs Confer a Direct Benefit on Defendants.**

Wisconsin law only permits unjust enrichment claims where plaintiffs conferred a benefit directly on the defendant.  *See In re Refrigerant Compressors Antitrust Litig.*, 2013 U.S. Dist.

LEXIS 50737, at *80-82 (dismissing Wisconsin unjust enrichment claim because the plaintiffs, as indirect purchasers could not allege that they conferred a direct benefit on the defendants). Here, Plaintiffs do not allege that they directly dealt with any Defendant.  In fact, Plaintiffs concede that they purchased digoxin "indirectly." Compl. ¶¶ 30-35.  By definition, *indirect* purchasers cannot confer a *direct* benefit on any Defendant.  Plaintiffs' unjust enrichment claim under Wisconsin law, therefore, fails.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Complaint should be dismissed in its entirety.

Dated: October 6, 2017                                 Respectfully submitted,

<table>
<tr>
<td>

*/s/ Jan. P. Levine*
Jan P. Levine
Robin P. Sumner
Michael Jay Hartman
PEPPER HAMILTON LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103-2799
Tel. 215-981-4000
levinej@pepperlaw.com
sumnerr@pepperlaw.com
hartmanm@pepperlaw.com

Jeffrey A. Carr
PEPPER HAMILTON LLP
301 Carnegie Center, Suite 400
Princeton, NJ 08543-5276
Tel. 609-951-4116
carrj@pepperlaw.com

Keith J. Harrison
Shari Ross Lahlou
Astor H.L. Heaven
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004-2595
Tel. 202-624-2500
kharrison@crowell.com

</td>
<td>

*/s/ Raymond A. Jacobsen, Jr.*
Raymond A. Jacobsen, Jr.
Paul M. Thompson
Lisa A. Peterson
MCDERMOTT WILL & EMERY LLP
500 N. Capitol St. NW
Washington, D.C. 20001
Tel. 202-756-8000
rayjacobsen@mwe.com
pthompson@mwe.com
lpeterson@mwe.com

David L. Hanselman Jr.
MCDERMOTT WILL & EMERY LLP
444 West Lake Street, Suite 400
Chicago, IL 60606-0029
Tel. 312-984-3610
dhanselman@mwe.com

Nicole L. Castle
MCDERMOTT WILL & EMERY LLP
340 Madison Ave.
New York, NY 10173
Tel. 212-547-5400
ncastle@mwe.com

*Counsel for Impax Laboratories, Inc.*

</td>
</tr>
</table>

26

| | |
|---|---|
| slahlou@crowell.com<br>aheaven@crowell.com<br><br>*Counsel for West-Ward Pharmaceuticals Corp.* | |
| */s/ Gerald E. Arth*<br>Gerald E. Arth<br>Theodore H. Jobes<br>Ryan T. Becker<br>FOX ROTHSCHILD LLP<br>2000 Market Street, 20th Floor<br>Philadelphia, PA 19103<br>Tel: (215) 299-2720<br>Fax: (215) 299-2150<br>garth@foxrothschild.com<br>tjobes@foxrothschild.com<br>rbecker@foxrothschild.com<br><br>George G. Gordon<br>Stephen D. Brown<br>Julia Chapman<br>DECHERT LLP<br>2929 Arch Street<br>Philadelphia, PA 19104-2808<br>Tel: (215) 994-2382<br>Fax: (215) 655-2240<br>george.gordon@dechert.com<br>stephen.brown@dechert.com<br>julia.chapman@dechert.com<br><br><br>*Counsel for Lannett Co., Inc.* | */s/ Chul Pak*<br>Chul Pak<br>Jeffrey C. Bank<br>WILSON SONSINI GOODRICH & ROSATI PC<br>1301 Avenue of the Americas, 40th Flr.<br>New York, NY 10019<br>Tel. 212-999-5800<br>jbank@wsgr.com<br>cpak@wsgr.com<br><br>Seth C. Silber<br>WILSON SONSINI GOODRICH & ROSATI PC<br>1700 K. St., 5th Flr.<br>Washington, D.C. 20006<br>silber@wsgr.com<br><br>*Counsel for Mylan Pharmaceuticals, Inc.* |
| */s/ John E. Schmidtlein*<br>John E. Schmidtlein<br>Sarah F. Teich<br>WILLIAMS & CONNOLLY LLP<br>725 Twelfth Street, N.W.<br>Washington, D.C. 20005<br>Telephone: (202) 434-5000<br>Facsimile: (202) 434-5029<br>jschmidtlein@wc.com<br>steich@wc.com<br><br>*Counsel for Par Pharmaceutical, Inc.* | |

27